**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVONNE BECKWITH,**

                              **Plaintiff,**

                    **v.**

**THE CITY OF SYRACUSE et al.,**

                              **Defendants.**
_____

                              **5:21-cv-809**
                              **(GLS/TWD)**

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Sivin, Miller & Roche LLP          EDWARD SIVIN, ESQ.
20 Vesey Street                    CLYDE RASTETTER, ESQ.
Suite 1400                         DAVID ROCHE, ESQ.
New York, NY 10007                 GLENN D. MILLER, ESQ.

**FOR THE DEFENDANTS:**
The City of Syracuse Law Department   TODD M. LONG, ESQ.
233 East Washington Street
300 City Hall
Syracuse, NY 13202

**Gary L. Sharpe**
**Senior District Judge**

### MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Davonne Beckwith commenced this action against

defendants the City of Syracuse, Detective Terell Irvine, and Patrol Officer

Jacob Breen alleging violations of his right to a fair trial[1] and malicious

prosecution.[2]  (Am. Compl., Dkt. No. 9.)  Pending is defendants' motion to

dismiss.  (Dkt. No. 12.)  For the reason that follow, defendants' motion is

granted in part and denied in part.

## II.  Background

### A.  Facts[3]

On September 6, 2016, Beckwith was arrested following a traffic stop

initiated by Irvine and Breen.  (Am. Compl. ¶¶ 13, 27, 30.)  When Irvine and

Breen approached the car driven by Beckwith, Beckwith asked why he was

being stopped.  (*Id.* ¶ 14.)  Irvine did not provide a reason for the stop, but,

instead, asked Beckwith whether there were any illegal substances or guns

in the car, which Beckwith denied.  (*Id.*)  After Beckwith provided Irvine his

driver's license and vehicle registration, "Irvine accused Beckwith of lying

---

[1]  Beckwith brings his Section 1983 right to fair trial claim pursuant to the Fifth, Sixth, and Fourteenth Amendments.  (Am. Compl., Dkt. No. 9 ¶ 51.)

[2]  Beckwith brings his malicious prosecution claims pursuant to the Fourth and Fourteenth Amendments and New York state law.  (Am. Compl. ¶ 53.)

[3]  Consistent with the standard of review, the facts are drawn from Beckwith's amended complaint and presented in the light most favorable to him.

about not having any contraband in the car, ordered [Beckwith] to exit the vehicle, and threatened [Beckwith] with physical violence if he did not comply." (*Id.* ¶ 17-18.) When Beckwith refused and began reaching for a cellphone to record the interaction, "Breen deployed his department-issued taser, striking [Beckwith] in the chest with the taser's prongs." (*Id.* ¶ 20.) After tasing Beckwith, Irvine and Breen pulled Beckwith from the car and on to the ground; they then lifted Beckwith up, and walked him over to their police vehicle. (*Id.* ¶ 21.)

Irvine and Breen then "instructed [Beckwith] to place his hands on the hood of the police vehicle, and Irvine began a pat down search of [Beckwith]'s person," which yielded no contraband. (*Id.* ¶ 22.) Breen then "conducted a second, more invasive and aggressive pat down search of [Beckwith]'s person," which again revealed no contraband. (*Id.* ¶ 23.) After the second search, Breen "donned a pair of blue gloves, and commenced a third even more invasive and aggressive search" during which "Breen stuck his hands inside [Beckwith]'s pants, felt around the inside of [Beckwith]'s waist area, and eventually went into [Beckwith]'s private areas . . . , manipulat[ed] [Beckwith]'s . . . genitals and slid[] his hand across [Beckwith]'s perineum and throughout the area around [his] anus." (*Id.* ¶

3

24.)  Beckwith expressed to Breen that he felt violated and wanted to be taken to the hospital.  (*Id.* ¶ 25.)  At this time, Breen paused his search of Beckwith, briefly returned to the police vehicle, and, for the third time, searched Beckwith's waistband.  (*Id.* ¶ 26.)  During the third search, Breen announced that he had found something in Beckwith's waistband and then produced a knotted bag, which field tests "allegedly confirmed" contained heroin and cocaine.  (*Id.* ¶¶ 26, 27.)  Beckwith was then handcuffed and transported to the Onondaga County Justice Center for booking.  (*Id.* ¶¶ 27, 30.)  Beckwith was later taken to the hospital after he complained of pain in the area around his anus, where an examination of Beckwith was conducted and found two abrasions near his anus."   (*Id.* ¶¶ 30.)

   "Breen either planted [the bag of contraband] on [Beckwith] . . . and/or falsely claimed to have discovered th[em] on [Beckwith]."  (*Id.* ¶ 28.)  Additionally, the field tests used on the substances allegedly found on his person were not legitimate, the tests were manipulated to yield positive results, or Breen misrepresented the results.  (*Id.* ¶ 29.)  Breen and Irvine's police reports "falsely represented" that the bag was discovered during the first pat down and mischaracterized the search of Beckwith "as a single, benign pat-down search," omitting any reference to the "invasive search" of

Beckwith's private areas.  (*Id.* ¶¶ 31-32.)  Irvine and Breen repeated these same false representations and mischaracterizations to the District Attorney and in the felony complaints they authored, which charged Beckwith with criminal possession of a controlled substance.  (*Id.* ¶¶ 33-34.)

Based on the "false representations and mischaracterizations from Breen and Irvine, grand jury proceedings [against Beckwith] were initiated on . . . September 9, 2016."  (*Id.* ¶ 35.)  Beckwith testified before the grand jury and denied possessing the substances allegedly found on his person, and claimed that any illegal substances found on him were planted.  (*Id.* ¶¶ 37.)  In his testimony, Beckwith also described the invasive nature of the search.  (*Id.* ¶ 38.)  Irvine and Breen also testified before the grand jury.  (*Id.* ¶¶ 36, 40.)  The District Attorney asked the grand jury to consider a charge of perjury against Beckwith "based on the discrepancies between [Beckwith]'s grand jury testimony and the testimony and representations of Irvine and Breen."  (*Id.* ¶ 40.)  The grand jury indicted Beckwith on two counts of criminal possession of a controlled substance, resisting arrest, obstructing governmental administration, and perjury.  (*Id.* ¶ 41.)

Before trial, the two charges of criminal possession of a controlled

5

substance were dismissed after laboratory tests revealed the bag purportedly found on Beckwith did not contain heroin, cocaine, or any other illicit substance.  (*Id.* ¶ 45.)  At the conclusion of the trial, Beckwith was found guilty of perjury and resisting arrest.[4]  (*Id.* ¶ 46.)  Beckwith was sentenced to two to four years incarceration for the perjury conviction and one year incarceration for the resisting arrest conviction.  (*Id.*)  "On April 24, 2020, the Appellate Division, Fourth Department, affirmed [Beckwith]'s conviction for resisting arrest but reversed [his] perjury conviction," because the government failed to prove any of his testimony was actually false and the verdict was against the weight of the evidence.  (*Id.* ¶ 47.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

---

[4]  The trial court declined to submit the charge of obstructing governmental administration to the jury.  (Am. Compl. ¶ 46.)

## IV.  Discussion

### A.   Malicious Prosecution

Defendants argue that Beckwith's claims for malicious prosecution

pursuant to Section 1983 and New York law must be dismissed for two

reasons: (1) defendants did not initiate the perjury charge against

Beckwith, the District Attorney did; (2) Beckwith has failed to allege that his

perjury charge terminated in his favor.  (Dkt. No. 12, Attach. 1 at 15-18.)

Beckwith counters that, although it was the District Attorney who asked the

grand jury to consider a charge of perjury, his allegations that "the false

representations and mischaracterizzations Irvine and Breen made in their

paperwork and Felony Complaints concerning the traffic stop and

subsequent search, [as well as] in their statements to the District Attorney,"

are sufficient to assert that defendants initiated the prosecution.  (Dkt. No.

17 at 16-18.)  Beckwith also asserts that he has adequately pleaded that

his perjury charge terminated in his favor because his perjury conviction

was reversed and vacated, and this constitutes favorable termination.  (*Id.*

at 18-22.)

For claims of malicious prosecution pursuant to Section 1983 and

New York law, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160-161 (2d Cir. 2010); *see Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (N.Y. 2000).  To initiate a criminal proceeding, the defendant must "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 217 (2d Cir. 2000) (citation omitted).  A defendant can be found to have initiated a prosecution where he "create[d] false information likely to influence a jury's decision and forwards that information to prosecutors."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  For Section 1983 malicious prosecution claims, "[a] plaintiff need only show that the criminal prosecution ended without a conviction," to satisfy the favorable termination element.  *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).  For malicious prosecution claims under New York law, the dismissal of criminal charges against the plaintiff can constitute favorable termination as long as it is not "inconsistent with innocence."  *Smith-Hunter*, 95 N.Y.2d at 191; *Smith v.*

*Town of Lewiston*, No. 17-CV-959, 2022 WL 3273241, at * 9 (W.D.N.Y. Aug. 11, 2022).  Whether a disposition was inconsistent with innocence is a case-specific determination that considers the circumstances of the particular case.  *See Cantalino v. Danner*, 96 N.Y.2d 391, 396 (NY 2001).

Beckwith has adequately alleged malicious prosecution pursuant to both Section 1983 and New York law.  With respect to the initiation of criminal proceedings, Beckwith plainly alleges that Irvine and Breen made false representations and mischaracterizations in their police reports and felony complaints, and repeated these same falsities to the District Attorney, who, in turn, asked the grand jury to consider a charge of perjury based on the discrepancies between Beckwith's testimony and what Breen and Irvine relayed through their reports, felony complaints, and statements. (Am. Compl. ¶¶ 31-33, 40.)  Thus, Beckwith has pleaded that Irvine and Breen initiated his prosecution for perjury by allegedly creating false information about the traffic stop and relaying the same information to the District Attorney.  *See Manganiello*, 612 F.3d at 163 (finding that a defendant police officer initiated criminal proceedings against the plaintiff where there was sufficient evidence to show the officer elicited false statements from witnesses, forwarded those statements to prosecutors,

and signed the felony complaint on which the plaintiff was arrested.)

With regards to the favorable termination element, defendants concede, and the court agrees, that the recent holding in *Thompson v. Clark* articulates that a plaintiff asserting a Section 1983 malicious prosecution claim is not required to demonstrate that their criminal prosecution ended with some affirmative indication of innocence.  (Dkt. No. 24.)  Accordingly, the Appellate Division's reversal of Beckwith's perjury conviction constitutes favorable termination for his Section 1983 malicious prosecution claim.  Additionally, Beckwith has alleged favorable termination under the New York standard.  While defendants provide the Appellate Division's decision reversing Beckwith's perjury conviction, (Dkt. No. 12, Attach. 3), arguing that the language of the decision is not consistent with innocence, (Dkt. No. 12, Attach. 1 at 16-19), the court cannot consider the Appellate Division's decision, "for the truth of the matter asserted" at this juncture.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("[A] court may take judicial notice [of a judicial opinion], [but] it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion" (internal quotation marks and citation omitted)).  Because

10

Beckwith's perjury conviction was reversed and there is nothing contained

in the amended complaint to suggest the perjury reversal was inconsistent

with innocence,[5] (*see generally* Am. Compl), defendants' motion to dismiss

is denied with respect to Beckwith's claim for malicious prosecution

pursuant to Section 1983 or state law.

## B.   <u>Right to a Fair Trial</u>

Defendants argue that dismissal of Beckwith's Section 1983 fair trial

claim is proper because it is barred by the *Heck* doctrine, *Heck v.*

*Humphrey*, 512 U.S. 477 (1994).  (Dkt. No. 12, Attach.1 at 20-23.)

Specifically, defendants contend that "any challenge to the police reports

and felony complaints authored by Breen and Irvine relative to [Beckwith]'s

conduct [during the traffic stop] would necessarily impugn the resisting

arrest conviction."  (*Id*. at 22.)  Beckwith counters that his fair trial claim

does not impugn his conviction for resisting arrest because his allegations

relate only to Irvine and Breen's false representations and

─────────────────

[5]  The amended complaint alleges that the Appellate Division
reversed Beckwith's perjury conviction because "the People failed to
prove, beyond a reasonable doubt, that any of [plaintiff's four] allegedly
perjurious statements were actually false" and "the verdict convicting
[plaintiff] of [perjury in the first degree] [wa]s against the weight of the
evidence."  (Am. Compl. ¶ 47.)

mischaracterizations regarding the invasive nature of the search and illicit contraband found in Beckwith's waistband, which have no affect on his resisting arrest conviction.  (Dkt. No. 17, Attach. 1 at 24-27.)  Additionally, Beckwith points to case law from this court, arguing that *Heck* does not bar his fair trial claim because his charge of resisting arrest is sufficiently distinct from his perjury charge.  (*Id.* at 22-23, 26-27 (citing *Dukes v. City of Albany*, 289 F. Supp. 3d 387 (N.D.N.Y. 2018).)  The court agrees with Beckwith that *Heck* does not bar his fair trial claim because Beckwith's convictions for perjury and resisting arrest are sufficiently distinct and his allegations do not call into question his conviction for resisting arrest.

In order to maintain a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).

Where a plaintiff brings a Section 1983 claim and "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated."
*Heck v. Humphrey*, 512 U.S. 477, 448 (1994).  If the plaintiff has an extant
conviction arising from the same proceeding as an invalidated conviction,
he must also demonstrate that the legal status of his extant conviction will
remain preserved if he prevails on his Section 1983 claim.  *See Poventund
v. City of New York*, 750 F.3d 121, 137-38 (2d Cir. 2014).  In these "mixed
verdict" situations, the court "considers whether the acquittal charge and
the conviction charge are sufficiently distinct to constitute a favorable
termination" by analyzing several factors: "(1) disparity in sentencing
ranges; (2) the elements of each crime; and (3) whether the crimes were
related or separate acts."  *Dukes*, 289 F. Supp. 3d at 396 (internal
quotation marks and citation omitted).

Here, Beckwith was sentenced to a term of imprisonment of two to
four years for his perjury conviction and one year for his resisting arrest
conviction.[6]  (Am. Compl. ¶ 46.)   The two offenses also have entirely
distinct elements.  *Compare* N.Y. Penal Law § 210.15 ("A person is guilty

---

[6]  Resisting arrest is a misdemeanor, punishable by a maximum
prison sentence of one year.  N.Y. Penal Law §§ 10.00, 205.30.  Perjury in
the first degree is a felony, for which a term of imprisonment in excess of
one year may be imposed.  N.Y. Penal Law §§ 10.00, 210.15.

of perjury in the first degree when he swears falsely and when his false

statement (a) consists of testimony, and (b) is material to the action,

proceeding or matter in which it is made"), *with* N.Y. Penal Law § 205.30

("A person is guilty of resisting arrest when he intentionally prevents or

attempts to prevent a police officer . . . from effecting an authorized arrest

of himself or another person.").  Additionally, from the allegations contained

in Beckwith's pleading, the two charges are based on different factual

allegations.  (Am. Compl ¶¶ 20, 38, 40.)  Notably, the amended complaint

does not allege Breen and Irvine falsified or mischaracterized any of the

facts to support Beckwith's charge for resisting arrest, rather, Beckwith

alleges that "Irvine and Breen both falsely represented that Irvine had

discovered the knotted bag in [Beckwith]'s waistband area during the first

pat down and . . . . also omitted from their police reports any reference to

the invasive search . . .  of [Beckwith]'s private parts."  (Am. Compl. ¶¶ 31-

32.)  Thus, at this juncture, because the two charges appear to be

sufficiently distinct and Beckwith does not allege that Breen and Irvine

fabricated any evidence with respect to his resisting arrest charge,

Beckwith's right to fair trial claim is not barred by *Heck*.  *See Wellner v. City

of New York*, 393 F. Supp. 3d 388, 397 (S.D.N.Y. 2019) (finding plaintiff's

fair trial claim was not barred by *Heck* where the plaintiff alleged fabrication

of evidence with respect to the dropped charges against her but did not

contest the validity of her still-standing conviction for disorderly conduct.)

## C.   <u>Municipal Liability</u>

Defendants move to dismiss Beckwith' 1983 claims against the City

of Syracuse on the grounds that Beckwith has not pleaded a policy,

practice, or custom by the City of Syracuse that resulted in Beckwith's

alleged constitutional deprivation.  (Dkt. No. 12, Attach. 1 at 23-25.)

Additionally, defendants move to dismiss Beckwith's state law claim for

malicious prosecution because there can be no basis to impose liability on

the City of Syracuse under a theory of respondeat superior, given that

Beckwith has "failed to adequately plead an underlying malicious

prosecution claim against . . . Breen and Irvine."  (*Id.* at 25.)  While

Beckwith does not respond to defendants' argument that he has not

pleaded a policy, practice, or custom, Beckwith does maintain that because

he has adequately alleged "a cognizable state law malicious prosecution

claim against Irvine and Breen, [he] likewise states a vicarious liability claim

against . . . [the] City of Syracuse under the doctrine of respondeat

superior."  (Dkt. No. 17 at 27) (emphasis omitted).

A municipality may be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see Dixon v. City of Syracuse*, 493 F. Supp. 3d. 30, 36 (N.D.N.Y. 2020) ("[T]he constitutional violation underpinning a § 1983 claim against a municipality must result from a governmental policy, custom or practice." (citation omitted)). To establish a municipal policy, practice, or custom, a plaintiff must provide evidence of (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates. *Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006) (citations omitted). Under New York law, "[a]n employer is vicariously liable for its employees' torts, even where the offending employee's conduct was intentional, if the acts were committed while the employee was acting within the scope of his or her employment." *Carnegie v. J.P. Phillips, Inc.*, 28 A.D. 599, 600 (2d Dep't 2006) (citations omitted).

16

In his amended complaint, Beckwith does not allege the existence of any policy, practice, or custom from which his alleged constitutional violation resulted.  (*See generally* Am. Compl.)  Accordingly, Beckwith's Secition 1983 claim for malicious prosecution against the City of Syracuse must be dismissed.  However, Beckwith's state law claim for malicious prosecution remains because defendants move for dismissal solely on the ground that Beckwith has not adequately pleaded the underlying claim for malicious prosecution against Irvine and Breen.  (Dkt. No. 12, Attach.1 at 25).  As discussed above, Beckwith has stated a claim for malicious prosecution under New York law, and, thus, defendants' motion is denied with respect to Beckwith's state law claim against the City of Syracuse.  *See Green,* 465 F.3d at 86.

**D.    Absolute Immunity**

Defendants argue that dismissal of Beckwith's Section 1983 claims is proper because police officers are entitled to absolute immunity from Section 1983 claims based on their testimony in judicial proceedings, "even assuming the testimony was perjurious."  (Dkt. No. 12, Attach. 1 at 10 (emphasis omitted).)  Defendants further assert that absolute immunity extends to testimony given during grand jury proceedings.  (*Id*.)  Beckwith

17

contends that Breen and Irvine are not entitled to absolute immunity because Beckwith's Section 1983 claims "are premised solely upon the alleged falsifications, mischaracterizations, and omissions by Irvine and Breen which they undertook separate and apart from their allegedly perjurious grand jury and other judicial testimony."  (Dkt. No. 17 at 11-12.)

Grand jury witnesses, including law enforcement officers, have "absolute immunity from any [Section] 1983 claim based on the witness' testimony, even if that testimony is perjurious."  *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (internal quotation marks and citation omitted).  In some instances, absolute immunity may not apply where a plaintiff brings a Section 1983 claim, alleging that a law enforcement officer "falsified evidence in addition to committing perjury before the grand jury."  *See Coggins v. Buonora*, 776 F.3d 108, 112, 113-14 (2d Cir. 2015).  "When a police officer claims absolute immunity for his grand jury testimony . . . the court should determine whether the plaintiff can make out the elements of his [Section] 1983 claim without resorting to the grand jury testimony."  *Id.* at 113.  A Section 1983 claim is not "based on" the officer's grand jury testimony if the claim exists independently of the testimony."  *Id.* at 113 (citing *Rehberg*, 566 U.S. at 369.)   On the other hand, if the grand jury

testimony is necessary to satisfy the elements of the claim, then the claim is "based on" the grand jury testimony and the officer is entitled to absolute immunity.  *Id.* at 113.

    While Beckwith does allege that Irvine and Breen made false statements in their testimony to the grand jury,  (Am. Compl. ¶ 39), Beckwith has sufficiently pleaded his Section 1983 claims by alleging that Irvine and Breen made falsifications and mischaracteraizations in their arrest reports and felony complaints, and repeated these same falsifications and mischaracterizations to the District Attorney, without needing to rely on Irvine and Breen's grand jury testimony.  *See supra* Part IV.A-B; (Am. Compl. ¶¶ 51, 53.)  Accordingly, defendants are not entitled to absolute immunity with respect to Beckwith's Section 1983 claims.  *See Coggins*, 776 F.3d at 113 (finding that the defendant was not entitled to absolute immunity because, even though his grand jury testimony paralleled the false information he provided in his police reports and statements to the district attorney, the alleged misconduct existed prior to and independently of the defendant's grand jury testimony "such that [plaintiff] would be able to prove his claims without ever relying on the . . . grand jury testimony").

**E.   Timeliness**

Finally, defendants assert that all of Beckwith's claims are time-barred to the extent that Beckwith attempts to "weave claims from his underlying arrest . . . into a claim based on his . . . overturned [perjury] conviction," because any claims pertaining to his September 6, 2016, arrest would be untimely after September 6, 2019.  (Dkt. 12, Attach. 1 at 13-15.) Beckwith counters that he has not asserted any time-barred claims because his "causes of action aris[e] solely from [his] recently overturned conviction of perjury," which was overturned on April 24, 2020.  (Am. Compl. ¶ 47; Dkt. No. 17, Attach. 1 at 10-11.)

"Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citations omitted).  The statute of limitations for Section 1983 claims for right to a fair trial and malicious prosecution begin to run when the criminal proceeding against the plaintiff terminates in his favor.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2156-57, 2161 (2019); *Wellner*, 393 F. Supp. 3d at 397.  Beckwith's perjury conviction was overturned on April 24, 2020.  (Am. Compl. ¶ 47.)

20

Accordingly, Beckwith's claims did not accrue until April 24, 2020, and, thus, his claims, which were asserted when this action was commenced in July 2021, are timely.  *See id.*

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 12) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** with respect to Beckwith's Section 1983 claims
>
> against the City of Syracuse; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Thérèse Wiley Dancks to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.


**IT IS SO ORDERED.**

November 17, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge