**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DAVONNE BECKWITH,

                                  Plaintiff,

       vs.                                        5:21-cv-809
                                               (ECC/TWD)

THE CITY OF SYRACUSE,
DETECTIVE TERELL IRVINE, and
PATROL OFFICER JACOB BREEN

                                  Defendants.

_____

**Appearances:**

Edward Sivin, Esq., _for Plaintiff_
Darienn P. Balin, Esq., _for Defendants_

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

      Plaintiff Davonne Beckwith commenced this action against Defendants the City of Syracuse, Detective Terell Irvine, and Patrol Officer Jacob Breen (Defendants) alleging violations of his right to a fair trial and malicious prosecution.  Amended Complaint, Dkt. No. 9 ¶¶ 50–55.  After a motion to dismiss, the following claims remain: (1) denial of the right to a fair trial, in violation of 18 U.S.C. § 1983 and the Fifth, Sixth, and Fourteen Amendments against Irvine and Breen; (2) malicious prosecution, in violation of 18 U.S.C. § 1983 and the Fourth and Fourteenth Amendments against Irvine and Breen; and (3) malicious prosecution, in violation of New York law against Defendants.  Presently before the Court is Defendants' motion for summary judgment.  The motion is fully briefed.  Dkt. Nos. 67-35, 71-4, 72, 77-2.  For the following reasons, Defendants' motion is denied.

## I.    BACKGROUND[1]

The parties give different versions of the events before Plaintiff's arrest and his subsequent prosecution.  Given these differences, each side's version is provided separately.

### A.    Undisputed Facts Regarding the Stop

On September 6, 2016, around 3:00 a.m., Irvine and Breen were patrolling in a marked police vehicle when they encountered Plaintiff who was driving his girlfriend in her car.  Def. Stat. ¶¶ 1, 2, 7.  Irvine and Breen initiated a traffic stop.  *Id.* at ¶ 13.

Irvine and Breen parked behind Plaintiff's car and got out.  Def. Stat. ¶ 17.  Irvine approached Plaintiff's driver's side, while Breen approached the passenger's side, where Plaintiff's girlfriend was sitting.  *Id.* at ¶ 18.  Irvine and Breen observed open containers of alcohol on the passenger seat floor and in the back seat.  *Id.* at ¶ 20.

### B.    Plaintiff's Facts[2]

Plaintiff asked Irvine why he had been stopped, and Irvine did not mention any alleged traffic violations, and questioned Plaintiff in an "accusatory and aggressive manner about whether he had any drugs or weapons in the car."  Pl. Stat. ¶ 2.  Irvine asked for Plaintiff's driver's license, the car's registration, and proof of insurance.  *Id.* at ¶ 3.  Plaintiff told Irvine that his license was suspended and produced an Onondaga County Sheriff's identification card.  *Id.* at ¶ 3; Def. Stat. ¶ 30.  Irvine asked Plaintiff whether he had a valid driver's license, and Plaintiff responded that he

---

[1] The following facts are drawn from Defendants' Statement of Material Facts (Def. Stat.), Dkt. No. 67-34, Plaintiff's Response to Defendants' Statement of Undisputed Facts (Pl. Resp.), Dkt. No. 71-3, and Plaintiff's Statement of Additional Facts, (Pl. Stat.), Dkt. No. 71-3.  Unless otherwise noted, citations to page numbers refer to pagination generated by the court's electronic filing system.

[2] Citations to Defendants' Statement of Material Facts in this summary of Plaintiff's Facts indicate that Plaintiff does not dispute those facts.

did not.  Def. Stat. ¶ 31.  Irvine then ordered Plaintiff to get out of the car and "mentioned something about [Plaintiff] being on parole, and about [him] being out past [his] curfew," but Irvine did not mention marijuana.  Pl. Resp. at ¶¶ 32, 39.

Plaintiff told the officers to "go run or check 'his shit'" and that he did not have to get out of the car.  Def. Stat. ¶ 45.  Plaintiff did not get out of the car.  Def. Stat. ¶ 46.  Breen went from the passenger's side of the car to the driver's side.  *Id.* at ¶ 47.  Plaintiff swore at Breen and repeated that he would not leave the car.  *Id.* at ¶ 49.  Breen told Plaintiff that he was under arrest and repeated the command to get out of the car.  *Id.* at ¶ 50.  Irvine then tried to open the driver's-side door, but it was locked, and he reached into the car through an open window to unlock the door and open it.  *Id.* at ¶ 51.

Plaintiff initially refused to get out of the car because he was "afraid of the officers, due to their aggressive manner."  Pl. Stat. ¶ 6.  At some point Plaintiff asked his girlfriend to record what was happening on her phone, but she was not able to do so, and Plaintiff tried to use her phone.  *Id.* at  ¶ 7.  Plaintiff denies that he balled his fist or reached behind his back and also denies that the officers ordered him to show his hands.  Pl. Resp. ¶¶ 40–43, 52.

Irvine and Breen drew their guns, but once Breen realized that Irvine had already drawn his gun, Breen holstered his gun and drew his taser.  Def. Stat. ¶ 60.  Breen yelled, "taser, taser, taser," and deployed one cartridge; the probes struck Plaintiff's chest and stomach.  *Id.* at ¶ 61.  Plaintiff was still able to speak and move.  *Id.* at ¶ 62.  Plaintiff turned toward Breen and Irvine and asked them if they were "'serious'" referring to the taser use.  *Id.* at ¶ 63.  Breen and Irvine grabbed Plaintiff, removed him from the car, and then put him onto the ground.  *Id.* at ¶ 64.  Plaintiff threatened to sue the officers at some point.  Pl. Resp. ¶ 80.

Irvine searched Plaintiff, but he found no "weapons, drugs, or other contraband," and he

told Breen that Plaintiff was "'clean.'" Pl. Stat ¶¶ 10, 11.  Breen conducted a second, "more extensive search" of Plaintiff, but did not recover anything.  *Id.* at ¶ 12.  Breen, "seem[ing] angry," put on gloves and "conducted an even more invasive search"  reaching inside Plaintiff's "underwear against his bare skin, making contact with [his] penis and testicles, and also the area around [his] anus."  *Id.* at ¶ 13.  Plaintiff was "shocked" and "felt violated," and he "yelled out something like 'get away from my balls'" or "'get out of there.'"  *Id.* at ¶ 14.  Plaintiff also twisted his body away from Breen and "tighten[ed] up his buttocks."  *Id.*  Breen did not recover anything.  *Id.* at ¶ 16.  Plaintiff again threatened to sue Breen and cursed at him.  *Id.* at ¶ 17.

Breen then "went inside his police car," came out, reached around Plaintiff's waistband and announced that "he found a bag containing drugs," that Plaintiff had never possessed.  Pl. Stat. ¶ 18.  Plaintiff was handcuffed after the third search.  Pl. Resp. ¶ 77.

Irvine and Breen then either failed to conduct any field test of the contents of the bag or conducted a field test that was negative for any controlled substance. [3]  Pl. Resp. ¶¶ 95–97. Irvine and Breen put Plaintiff in the back of the patrol car.  Def. Stat. ¶ 88.

When a Syracuse Police Sergeant came to make a use of force report, Plaintiff "complained about his 'rectum area, [his] asshole area" explaining that "'it was burning;'" and stated that he "'need[ed] to go to the hospital.'"  Pl. Resp. ¶ 105.

In arrest reports and the criminal complaints, Irvine and Breen made "false representations about the encounter with Plaintiff," including that Plaintiff struggled with Irvine and Breen and Plaintiff possessed controlled substances.  Pl. Stat. ¶¶ 33–39.

---

[3] Plaintiff appears to deny that a field test was performed on the contents in the purportedly seized bag, but he does not cite to any admissible evidence and admits that Breen "demonstrated the field test kits" to another officer.  *See* Pl. Resp. ¶¶ 93–95, 98.

### C.    Defendants' Facts

Irvine and Breen saw Plaintiff commit several traffic violations before they pulled him over.  Def. Stat. ¶¶ 8, 11, 12.  After stopping Plaintiff, Irvine and Breen smelled burned marijuana coming from the car and saw a marijuana blunt in the front cupholder.  *Id.* at ¶¶ 19, 21.  Irvine told Plaintiff that he had been stopped because of these traffic violations.  *Id.* at ¶ 24.

When asked to produce his driver's license, registration, and proof of insurance, Plaintiff began to frantically look for the paperwork and asked why he was pulled over, and Irvine explained the vehicle infractions again.  Def. Stat. ¶ 26.  Plaintiff's behavior was overly excited, and he was breathing heavily.  *Id.* at ¶ 27.  Plaintiff said that he had been drinking, but was "good to drive." *Id.* at ¶ 28.  Plaintiff had "an unmistakable odor of alcohol" on his breath.  *Id.* at ¶ 29.  After Plaintiff failed to produce a driver's license, Irvine ordered Plaintiff to out of the car, and he did not mention Plaintiff's curfew or parole status.  *Id.* at ¶¶ 31–32, 39.

Breen had observed Plaintiff "holding an item in his right hand which was closed into a fist so that . . . Breen could not see what the object was."  Def. Stat. ¶ 40.  Plaintiff's right hand was "balled-up between his upper right leg and the center console . . .  as if to hide something in the back of his pants."  *Id.* at ¶ 41.  Irvine independently noticed Plaintiff "reach his right hand behind his back towards his waistband and beg[in] 'digging' behind his back."  *Id.* at ¶ 42.  For "approximately one minute," Plaintiff did not follow the order to get out of the car, and Plaintiff continued digging behind his back while Breen ordered Plaintiff to "show his hands."  *Id.* at ¶ 43.  Breen pleaded with Plaintiff to leave the car.  *Id.* at ¶ 47.  Plaintiff said "fuck you" to Breen and refused to get out of the car.  *Id.* at ¶ 49.  Breen told Plaintiff that he was under arrest and that he needed to get out of the car.  *Id.* at ¶ 50.  Irvine unlocked Plaintiff's door and continued to order Plaintiff to show his hands.  *Id.* at ¶¶ 51–52.

Irvine saw Plaintiff holding "a sandwich bag with a tan substance." Def. Stat. ¶ 53. Plaintiff tried to hand the bag to his girlfriend, but she refused to take it. *Id.* at ¶ 54. "Based upon his observations, training, and experience with prior drug arrests," Irvine believed that the tan substance was "possibly heroin." *Id.* at ¶ 55. Plaintiff reached behind his back with the bag still in his hand so that the bag was no longer in Irvine's view. *Id.* at ¶ 56. Irvine continued to order him to show his hands before Plaintiff turned his body "left to face the driver's side door." *Id.* at ¶ 57. "Plaintiff's right hand remained behind his back while he then swung his left arm upward toward" Breen. *Id.* at ¶ 58.

After using a taser to no effect, Irvine and Breen removed Plaintiff from the car and onto the ground. Def. Stat. ¶¶ 60–64. Breen yelled, "he's got 'dope.'" *Id.* at ¶ 65. After Plaintiff was on the ground, the officers ordered Plaintiff to place his hands behind his back and stop resisting, and Plaintiff continued "to kick, thrash, and push" Irvine and Breen. *Id.* at ¶ 67. "While wrestling with the Officers, Plaintiff stated that he was related to" the Syracuse Police Chief Fowler, "that he had previously testified against murderers, and that he could 'drop' officers a gun." *Id.* at ¶ 70. After "approximately one to two minutes" of struggle, including kicking and flailing, Plaintiff was handcuffed. *Id.* at ¶ 72. During the struggle, Plaintiff's "pants and underwear [were] pushed down, exposing most of his buttocks." *Id.* at ¶ 73. While handcuffed, Plaintiff continued trying to reach his hand into "the same area of his waistband that he had while inside" the car. *Id.* at ¶ 74. After Irvine and Breen pulled Plaintiff to his feet, they observed "a bag that was half-exposed at the top of the waistline of [his] underwear" that "appeared to be the same one that Plaintiff had attempted to hand" to his girlfriend. *Id.* at ¶ 76. Irvine and another officer walked Plaintiff to the patrol car and removed the bag by pulling it from outside the waistband. *Id.* at ¶¶ 77–78. Irvine frisked Plaintiff, and Plaintiff began "moving his body and thrusting his hips and groin" against

the patrol car while swearing at the officers and threatening to sue them and kill them and their families.[4]  *Id.* at ¶¶ 79–80.  Irvine was the only officer who searched the Plaintiff; he searched Plaintiff only once; and he did not place his hand between Plaintiff's underwear and his pants or in the area of Plaintiff's anus.  *Id.* at ¶¶ 82–84.  Plaintiff never complained about the nature of the search to Irvine and Breen.  *Id.* at ¶ 108.

The bag recovered from Plaintiff "appeared to be a clear sandwich bag with loose rice in the bottom containing two smaller knotted bags, one containing a tan powder that appeared  to be cocaine and the other containing a chunky beigey white substance that appeared to be cocaine or crack cocaine."  Def. Stat. ¶ 87.  A field test of the substances in the bag was positive for heroin and cocaine.  *Id.* at ¶¶ 96–97.  A field test of the blunt was positive for marijuana.  *Id.* at ¶ 101.

### D.    Undisputed Facts

A Syracuse Police Sergeant went to the scene to investigate the use of force.  *See* Def. Stat. ¶ 105.  Plaintiff told the sergeant that "he was not injured."  *Id.*  The Use of Force report states that Plaintiff reported being "strip[] searched."  Dkt. No. 67-13 at 1.  The Use of Force report also states that Plaintiff told the Sergeant that Irvine and Breen planted drugs on him that they took from their car's glove box after his arrest.  *Id.*

Plaintiff was taken to the Onondaga County Justice Center where a nurse evaluated him and then he was taken to Upstate University Hospital.  Def. Stat. ¶¶ 106, 116, 118.  At Upstate, Plaintiff (1) told a doctor that  "'an arresting police officer'. . . searched for drugs around his genitals and, in the process, scratched him around the anus;" (2) "denied 'rectal entry by the officer;" and (3) "requested a sexual assault evaluation," as "'he just wanted to make sure his injuries were documented.'"  *Id.* at ¶¶ 119–20, 124–25.  Plaintiff "was diagnosed with an 'abrasion

---

[4] Plaintiff repeated the threats when he was taken to the Justice Center.  Def. Stat. ¶ 107.

of [his] buttocks excluding anus.'" *Id.* at ¶ 122. The medical records note "2 superficial abrasions just left of the anus. Both <1 cm in diameter." Upstate University Medical Records at 7, Dkt. No. 67-19. Plaintiff was given hydrocortisone cream and discharged. Def. Stat. ¶¶ 129–30.

Plaintiff's girlfriend testified before an Onondaga County Grand Jury that she had "'a little visual' of what occurred;" but she was drunk and could not "remember exactly" what happened; and Plaintiff said "something like 'get out my balls' or 'get out something, get out, get out.'" Grand Jury Transcript (Grand Jury Tr.) at 109:20–25, 110:6–8, 110:14–15, Dkt. No. 67-8; Def. Stat. ¶¶ 132, 143. Plaintiff waived immunity and testified about the events leading up to his arrest and his arrest. Def. Stat. ¶ 136; *see* Grand Jury Tr. at 40:19–73:1. Regarding Breen's alleged third search, he testified that Breen "went in my rectum, slid his hand in my pants and rectum to see if I have anything. He stood me up." Grand Jury Tr. at 45:9–10. "After he just did three searches on me, did a cavity search and everything he didn't find nothing." *Id.* at 45:16–18. After Plaintiff described Breen planting drugs on him, a prosecutor asked, "[s]o this is the drugs that you never possessed before in your life?" and Plaintiff answered, "I never possessed these drugs, sir." *Id.* at 56:13–15. A prosecutor asked, "do you think they planted drugs on you that a user would possess or they planted drugs on you to show you were a drug dealer," and Plaintiff answered, "I don't know the reason for him planting that on me at all, sir." *Id.* at 57:3–6, 57:8–10.

The grand jury returned an indictment charging Plaintiff with all of the counts in the complaint: two counts of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fourth degree, one count of criminal possession of a controlled substance in the seventh degree, unlawful possession of marijuana, resisting arrest, obstructing governmental administration in the second degree, tampering with physical evidence, aggravated unlicensed operation, and "various traffic offenses" Def. Stat.

¶¶ 103, 144.  An Onondaga County Assistant District Attorney then presented the grand jury with a perjury in the first degree count arising from Plaintiff's grand jury testimony, and the grand jury returned an indictment on that count.  *Id.* at ¶¶ 145, 146, 148.

Several months later, a laboratory report concluded that there were no controlled substances in the substances in the bag allegedly seized from Plaintiff.  Def. Stat. ¶ 160.  The lab also failed to find any fingerprints on the bag.  Pl. Stat. ¶ 28.  Shortly after that, the District Attorney dismissed all the "drug charges" against Plaintiff.  Def. Stat. ¶ 161.

The case went to trial on the remaining charges, and Plaintiff testified.  Def. Stat. ¶¶ 164–65.  Regarding the alleged third search, Plaintiff testified, "[w]hat I meant was . . . he slid his hands inside my front of my boxers, grabbed my balls, spread them apart, then he slid his hand in the back of my ass in my buttocks area and, like, sort of swiped me with his finger.  He felt like he was digging to feel . . . my asshole, my anus." Trial Tr. 2 at 88:1–6, Dkt. No. 67-25.  When asked for his "understanding of what the rectum is," Plaintiff testified that it is the "bottom of my asshole." *Id.* at 88:7–10.  When asked whether he knew "what a cavity search is," Plaintiff testified that it is "[w]hen you check somebody when they're naked their inside clothing area.  Like, a visual cavity search.  Like, they make you squat, see if you had anything, you know, things like that.  But he didn't do that.  He did a physical cavity search. . . . He . . . intruded.  He went inside my underwear." *Id.* at 88:19–89:9.

The jury found Plaintiff guilty of perjury and resisting arrest, and he was sentenced to "two to four years in prison" for his perjury conviction, and one year consecutive for resisting arrest.  Def. Stat. ¶¶ 168, 170; Dkt. No. 67-26.[5]   The jury found that Plaintiff was guilty of perjury for

---

[5] The obstruction of governmental administration charge was not submitted to the jury.  Trial Tr. 2 at 197:18–23.

four specific statements: (1) "He went in my rectum, slid his hand in my pants and rectum to see if I have anything. He stood me up;" (2) "after he just did three searches on me, did a cavity search and everything he didn't find nothing;" (3) "I never possessed these drugs, sir;" and (4) "I don't know the reason for him planting that on me at all, sir." Def. Stat. ¶ 169.

In 2020, the New York State Appellate Division, Fourth Department reversed Plaintiff's perjury conviction because it was against the weight of the evidence. Def. Stat. ¶ 174; *People v. Beckwith*, 182 A.D.3d 995, 995 (4th Dep't 2020). The Appellate Division's decision noted

> As we recently observed in analogous circumstances, "[a]lthough the People may have proved that defendant is probably guilty, the burden of proof in a criminal action is, of course, much higher than probable cause; the prosecution is required to prove a defendant's guilt beyond a reasonable doubt, and the evidence in this case does not meet that high standard."

*Beckwith,* 182 A.D.3d at 996 (quoting *People v. Carter*, 158 A.D.3d 1105, 1106 (4th Dep't 2018)).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

10

of proof at trial." *Celotex*, 477 U.S. at 322; *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Further, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## III.    DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. [6]

---

[6] Plaintiff argues that the motion should be denied because Defendants violated N.D.N.Y. Local Rule 56.1(a) by representing that their Statement of Material Facts were not disputed when they knew that Plaintiff disputed many of those facts. Dkt. No. 71-3 at 1. Given that Defendants argue

**A.  Denial of Right to Fair Trial**

Plaintiff claims that Irvine and Breen violated his right to a fair trial by fabricating evidence that supported the perjury charge.  Defendants argue that they are entitled to summary judgment on this claim because Plaintiff cannot establish that Irvine and Breen were investigating officials given the presumption that the prosecutor "exercised his independent prosecutorial discretion." Defendants' Memorandum of Law (Def. Mem.) at 19–23, Dkt. No. 67-35. They also argue that Plaintiff has not offered sufficient evidence for a rational jury to find that they fabricated any evidence.  Def. Mem. at 10–18.

Plaintiff responds, among other things, that there are genuine issues of disputed material facts regarding whether (1) Irvine and Breen were investigating officials, (2) the prosecutor's decision was a superseding cause, and (3) Irvine and Breen fabricated evidence.  Plaintiff's Memorandum of Law (Pl. Mem.) at 12–26, Dkt. No. 71-4.  For the following reasons, Defendants' motion is denied on this claim.

"In a § 1983 suit alleging the denial of a fair trial because of fabricated evidence, a plaintiff must show that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'"  *Davis-Guider v. City of Troy*, No. 23-589, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024)  (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

"The second element of a fair trial claim based on fabricated evidence requires a plaintiff to prove that a defendant's use of inaccurate information was 'knowing, as opposed to mistaken.'"

_____

that  Plaintiff has not produced sufficient evidence to create a genuine dispute of material fact, this request is denied.

*Davis-Guider,* 2024 WL 5199294, at *3 (quoting *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) and citing *Garnett,* 838 F.3d at 280 (explaining that "an arrestee must prove by a preponderance of the evidence that the officer *created* false information")).  In other words, "absent scienter, showing that the prosecution relied on false evidence is insufficient." *Id.*  Further, the "mere fact that the parties present conflicting evidence does not mean that one side's evidence was fabricated." *Id.* Nonetheless, "a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas v. Ruffin,* 816 F.3d 214, 221 (2d Cir. 2016)).

In *Bellamy,* the Second Circuit reversed a district court's decision granting summary judgment for the defendant on a fair trial claim based on an allegation that the defendant detective lied that plaintiff had made an inculpatory statement.  914 F.3d at 746.  The district court found that because the evidence supporting the plaintiff's allegation was "self-serving deposition testimony that [was] 'unsubstantiated by any other direct evidence,'" it could not "raise an issue of material fact." *Id.*  The Second Circuit reversed and concluded that the plaintiff's "testimony was consistent and uncomplicated: he never made the statement," and his testimony was not "wholly improbable." *Id.*  Therefore, a reasonable jury could make the "inference that [the defendant detective] fabricated the . . . statement." *Id.* at 747.

Like the plaintiff in *Bellamy,* Plaintiff's testimony was "consistent and uncomplicated." 914 F.3d at 746.  Plaintiff testifies that he never possessed the bag that allegedly field tested positive for controlled substances; Breen made contact with his penis, testicles, and the area around his anus during a search; and Irvine and Breen lied about the bag and the contact in their reports. Pl. Stat. ¶¶ 13, 18,  33–36.  In addition, Plaintiff's testimony is not "wholly improbable" about either the bag or the search. *Bellamy,* 914 F.3d at 746.  Regarding the bag, it is undisputed that

there was no fingerprint evidence on it, and the lab report concluded that there were no controlled substances in it.  Def. Stat. ¶ 160; Pl. Stat. ¶ 28.  This is sufficient to create an issue of material disputed fact about whether Irvine and Breen planted the bag on Plaintiff and lied about what happened.  That is, a rational jury could rely on this evidence to conclude that Plaintiff never possessed the bag purportedly seized during the stop.

Regarding the search, in addition to Plaintiff's testimony, Plaintiff offered evidence that a rational jury could find corroborates his testimony including (1) medical records demonstrating that he had injuries consistent with his testimony; (2) his girlfriend's grand jury testimony that Plaintiff said "something like 'get out my balls' or 'get out something, get out, get out;'" and (3) contemporaneous statements to the sergeant investigating the use of force and medical personnel.[7] Def. Stat. ¶¶120, 122. 124–25; Grand Jury Tr. at 110:6–8; Dkt. No. 67-13 at 1.

Defendants offer reasons why a jury may not credit Plaintiff's testimony or the potential corroborating evidence, and they argue that the corroborating evidence does not "prove" fabrication. Dkt. No. 72. at 7.  But the standard here is not whether Plaintiff has proven fabrication.  The standard is instead whether there is a genuine issue of material disputed fact regarding fabrication, and whether a rational jury could find fabrication based on the evidence Plaintiff has presented.  Plaintiff has satisfied that standard as to the fabrication element.

Defendants also focus on the first element of a fair trial claim.[8]  That element requires a plaintiff to prove that the defendant was an "investigating official."  "[T]he Second Circuit does

---

[7] Plaintiff also relies on the Syracuse Citizen Review Board findings that he argues sustained his allegations against Irvine and Breen.  Plaintiff has not explained how this document would be admissible, and it is therefore not considered.  *See Grant v. Lockett*, No. 19-1558, 2021 WL 5816245, at *2 (2d Cir. Dec. 8, 2021) (concluding that similar Syracuse Citizen Review Board findings are inadmissible hearsay).

[8] The Court does not address the other elements of the fair-trial claim because the Defendants do not address them in their papers.

not require that an officer strictly be an 'investigating officer' to be held liable." *DiPippo v. Cnty. of Putnam*, No. 17-cv-7948, 2019 WL 1004152, at *17 (S.D.N.Y. Feb. 28, 2019); *see also Alston v. Rutkowski*, No. 3:23-cv-1304, 2024 WL 3638259, at *4 (D. Conn. Aug. 2, 2024) (noting that "any official can be held liable under § 1983 if he fabricates evidence that is forwarded to a prosecutor"). Rather, the Second Circuit has "emphasized that '[w]hen[ever] a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages.'" *DiPippo*, 2019 WL 1004152, at *17 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) and citing *Garnett*, 838 F.3d at 276).

The position taken by Irvine and Breen—that the prosecutorial decision to add a perjury charge would shield them from liability regardless of whether they knowingly fabricated evidence—is not persuasive. Perjury charges normally occur after an investigation, and just as when a prosecutor decides whether to pursue charges or dismiss a complaint, the decision to pursue charges "may depend on the prosecutor's . . . assessment[] of the strength of the case," that "may be critically influenced by fabricated evidence." *Garnett*, 838 F.3d at 277. In addition, any argument "that false evidence about one charge cannot support a fair trial claim if the plaintiff is not ultimately prosecuted for that crime . . . is inconsistent with controlling law." *McKinley v. Crevatas*, No. 20-cv-3606, 2023 WL 4364182, at *12 (S.D.N.Y. July 6, 2023); *see id.* (observing that the defendants' statements about plaintiff's "participation in a drug sale could have impacted the prosecutor's decision to charge him with resisting arrest" and concluding that the defendants' "false statements about the drug crime are not as attenuated from the obstruction crime as [the d]efendants make them out to be, because they could have contributed to [the p]laintiff's

15

prosecution for that separate crime.").

Here, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that the prosecutor's decision relied on Irvine and Breen's knowing fabrications. *See Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial and the harm occasioned by such an unconscionable action is redressable in an action . . . under . . . § 1983.).

Summary judgment is therefore denied as to the fair trial claim.

### B.    Malicious Prosecution

Defendants seek summary judgment on Plaintiff's malicious prosecution claims arguing that Irvine and Breen did not initiate the perjury prosecution or act with malice, and Plaintiff cannot rebut the presumption of probable cause created by the indictment.   Def. Mem. at 19–28. Regarding Plaintiff's claim under New York law, Defendants argue that language in the decision reversing Plaintiff's perjury conviction is inconsistent with innocence. *Id.* at 28–30.

Plaintiff responds that it is law of the case that Irvine and Breen initiated the perjury prosecution or, in the alternative, that there is a genuine dispute of material fact whether Irvine and Breen initiated or continued the perjury prosecution. Pl. Mem. at 26–35.  Plaintiff argues that there is also a genuine issue of material disputed fact as to whether there was probable cause for the perjury indictment and whether there is malice given that malice may be inferred from the absence of probable cause. *Id.* at 35–37.  Finally, Plaintiff argues that the reversal of his perjury conviction was not inconsistent with his innocence. *Id.* at 37–41.

To establish a malicious prosecution claim under § 1983 and New York law, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2)

termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010); *see Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000) (providing the elements of a malicious prosecution claim under New York law).  A § 1983 malicious prosecution claim requires a plaintiff to also "demonstrate a 'sufficient post-arraignment liberty restraint.'" *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021)  (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).

As an initial matter, Plaintiff's attempt to rely on the law of the case doctrine to establish that Irvine and Breen initiated the prosecution is not persuasive.  "[T]he discretionary law of the case doctrine applies to issues of law already decided by the Court." *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009).  Here, Plaintiff ask the Court to treat a decision on a motion to dismiss as law of the case for this summary judgment motion.  Given the different standards of review for motions to dismiss and motions for summary judgment, the Court declines to apply that doctrine here. *See Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 244 (N.D.N.Y. 2004) (concluding, when considering a summary judgment motion, that decision on motion to dismiss issued "at an early procedural juncture, prior to the completion of discovery, and upon a scant record, particularly in contrast to the exhaustive materials now before the court" was not law of the case); *Nobel Ins. Co. v. City of New York*, No. 00–cv-1328, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (noting that law of the case doctrine "does not preclude" a court "from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss").  The decision on Defendant's motion to dismiss is therefore not law of the case.

For the first element—initiation of a criminal proceeding—the defendant must "play[] an

active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217 (citation omitted).  As explained above, Plaintiff has produced evidence that would allow a rational jury to conclude that Irvine and Breen fabricated evidence and forwarded it to the prosecutors.  This is sufficient for the initiation element.  *See Ricciuti*, 124 F.3d at 130  (concluding for a malicious prosecution claim that even where "charges were added by" a prosecutor, and not "directly filed" by a police officer, "a jury could find that" the police officer "played a role in initiating the prosecution by preparing allegedly fabricated evidence and forwarding it to prosecutors."); *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y.1999) (noting in a case with a police officer defendant that "[w]here a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution"); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) (concluding that "if any of the [police officer] defendants misled the prosecutor by providing false statements regarding plaintiff's conduct . . . they could be liable for malicious prosecution").  This question—whether Irvine and Breen fabricated evidence and forwarded it to prosecutors—is a genuine issue of disputed material fact that a jury must resolve.[9]

For the second element—favorable termination—for § 1983 malicious prosecution claims,

---

[9] Moreover, "defendants in [§] 1983 cases are liable for consequences caused by reasonably foreseeable intervening forces."  *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (quoting *Zahery v. Coffey,*  221 F.3d 342, 352 (2d Cir. 2000) (other citation omitted).  The Second Circuit has "observed that a defendant cannot rely on the alleged existence of a superseding cause when that subsequent decision-maker has been deceived by the defendant's actions," *id.* (citing *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) and has also "explained that '[e]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty," *id.* (quoting *Zahery*, 221 F.3d at 352).  This is another reason why summary judgment is inappropriate; a jury must decide this question.

a "plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). For malicious prosecution claims under New York law, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001) (citing *Smith-Hunter*, 95 N.Y.2d at 199). "[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Id.* at 396. "[S]everal types of terminations do not qualify as 'favorable' at common law, since they are fundamentally inconsistent with innocence," including misconduct by the defendant that prevents the trial, charges that are withdrawn or abandoned as a result of a compromise, and charges that are withdrawn out of mercy. *Id.* at 395 (citing *Smith-Hunter*, 95 N.Y.2d at 196–97).

In contrast, courts in the Second Circuit have concluded that convictions were favorably terminated when they were reversed as against the weight of the evidence. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 438, 456 (E.D.N.Y. 2015) (noting that the plaintiff's "criminal proceeding terminated in his favor . . . when the Appellate Division reversed his conviction" as against the weight of the evidence); *Boley v. Durets*, No. 12-cv-4090, 2013 WL 6562445, at *1, *6 (E.D.N.Y. Dec. 10, 2013) (same)); *see also Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 225, 227 (S.D.N.Y. 2006) (same where defendant admitted this element)).

Here, Defendants rely on the Appellate Division's statement in its decision reversing Plaintiff's conviction: "in analogous circumstances, '[a]lthough the People may have proved that defendant is probably guilty, the burden of proof in a criminal action is, of course, much higher than probable cause.'" *People v. Beckwith*, 182 A.D.3d 995, 996 (4th Dep't 2020). As an initial matter, it is not clear that this language is a statement that Plaintiff was more likely than not guilty,

but even if it were, neither the reversal nor this language was inconsistent with innocence. Plaintiff's prosecution was not terminated "as a result of a settlement, mercy or any misconduct by plaintiff," *see Smith-Hunter*, 95 N.Y.2d at 198, or any of the other circumstances where a defendant's guilt would have been established beyond a reasonable doubt but for the dismissal, *see id.* at 196–97. Indeed, the Appellate Division stated, "[w]e agree with defendant that the People failed to prove, beyond a reasonable doubt, that any of [Plaintiff's] allegedly perjurious statements to the grand jury were actually false." *Beckwith*, 182 A.D.3d at 995. Defendant's argument on this issue therefore fails. *See Cantalino*, 96 N.Y.2d at 395.

Regarding the third element—lack of probable cause for commencing the proceeding—it is well established that the "existence of probable cause is a complete defense to a malicious prosecution claim," *Cornelio v. Connecticut*, 32 F.4th 160, 178–79 (2d Cir. 2022), and "indictment by a grand jury creates a presumption of probable cause," *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003). "That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello*, 612 F.3d at 162 (citation omitted).

"Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Manganiello*, 182 F. Supp. 3d at 162 (citation omitted). Further, "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Id.* (quoting *Ricciuti*, 124 F.3d at 130) (additional citation omitted). In addition, the element of "malice can be inferred when a plaintiff is prosecuted without probable

cause." *Rentas*, 816 F.3d at 221. Finally, "[a]t summary judgment" on a malicious prosecution claim, a plaintiff is "entitled to rely on his own testimony to establish his malicious prosecution claim" and "contradict the defendants' version of events" and does not have to "produce independent evidence that the defendants lied to prosecutors." *Id.* at 221; *cf. Ortiz v. Stambach*, 137 F.4th 48, 62 (2d Cir. 2025) (noting, in a case where the plaintiff could not "remember his interaction" with defendant detective, "the law does not require a [malicious prosecution] plaintiff to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence, and, thus, a plaintiff may do so entirely through circumstantial evidence").

Here, as discussed above, Plaintiff testified that he never possessed the bag with substances that purportedly field tested positive for controlled substances; Breen made contact with his penis, testicles, and the area around his anus during a search; and Irvine and Breen lied about the bag and the contact in their reports. Pl. Stat. ¶¶ 13, 18, 33–36. Regarding the bag, it is undisputed that there was no fingerprint evidence on it, and the lab report concluded that there were no controlled substances in it. Def. Stat. ¶ 160; Pl. Stat. ¶ 28. Viewing this evidence in the light most favorable to Plaintiff, it is sufficient to create an issue of material disputed fact about whether Irvine and Breen planted the bag on Plaintiff and lied about what happened. In addition, a rational jury could rely on this evidence to conclude that Plaintiff never possessed the bag supposedly seized during the stop.

Regarding the search, in addition to Plaintiff's testimony, Plaintiff offered evidence that a rational jury could find corroborates his testimony including (1) medical records demonstrating that he had injuries consistent with his testimony; (2) his girlfriend's grand jury testimony that Plaintiff said "something like 'get out my balls' or 'get out something, get out, get out;'" and (3)

contemporaneous statements to the sergeant investigating the use of force and medical personnel.[10]
Def. Stat. ¶¶120, 122. 124–25; Grand Jury Tr. at 110:6–8; Dkt. No. 67-13 at 1.

In sum, as explained in the analysis of the fair trial claim, there is a genuine issue of material disputed fact—regarding whether Irvine and Breen fabricated evidence and forwarded known false evidence to prosecutors—that could allow a reasonable jury to conclude that there is sufficient evidence to rebut the presumption of probable cause.   *See Manganiello*, 182 F. Supp. 3d at 162. Finally, given that there is a disputed material fact as to probable cause, there is also a disputed material fact as to malice.   *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well. A lack of probable cause generally creates an inference of malice.") (citing *Ricciuti,* 124 F.3d at 131).

For all of these reasons, Defendants' motion for summary judgment is denied in its entirety.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants the City of Syracuse, Detective Terrell Irvine, and Patrol Officer Jacob Breen's motion for summary judgment pursuant to Rule 56, Dkt. No. 67 is **DENIED**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Elizabeth C. Coombe
U.S. District Judge

---

[10] Plaintiff also relies on the Syracuse Citizen Review Board findings that he argues sustained his allegations against Irvine and Breen.  As explained above this evidence is not considered.