# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DAVONNE BECKWITH,

                    Plaintiff,

vs.

THE CITY OF SYRACUSE,
DETECTIVE TERELL IRVINE, and
PATROL OFFICER JACOB BREEN,

                    Defendants.

Civil Action No.: 5:21-cv-809
(ECC/TWD)

## DEFENDANTS' TRIAL BRIEF

This Trial Brief is submitted on behalf of Defendants Terell Irvine ("Officer Irvine") and Jacob Breen[1] ("Officer Breen"), and the City of Syracuse ("City") (collectively, "Defendants").

## NATURE OF THE ISSUES TO BE TRIED

This is a lawsuit brought pursuant to 42 U.S.C. § 1983 by Plaintiff Davonne Beckwith ("Plaintiff" or "Mr. Beckwith") with two claims surviving for trial: (1) malicious prosecution in violation of the Fourth Amendment; and (2) denial of the right to a fair trial (via fabrication of evidence) in violation of the Fourteenth Amendment.[2] Both of these claims relate *solely* to Mr. Beckwith's criminal conviction on four counts of perjury in Onondaga County Court on June 1, 2017 following a jury trial. The perjury charges involved four discrete statements made by Mr.

---

[1] At the time of Plaintiff's arrest on September 6, 2016, Sgt. Irvine and Sgt. Breen had not yet been promoted and were, at all times relevant to this action, police officers.

[2] Although there is an additional state-law malicious prosecution claim asserted against the City, it is entirely derivative of the federal constitutional claim and therefore does not require separate analysis.

4903-8214-0554, v. 13

Beckwith during the testimony he offered before an Onondaga County Grand Jury and which were alleged to have been false. The decision to seek perjury charges against Mr. Beckwith was made solely by the Onondaga County District Attorney's Office ("OCDA"), by individuals who are not defendants in this lawsuit. The indictment for perjury itself was returned by an Onondaga County Grand Jury (the "Grand Jury") following the OCDA's decision to pursue it.

The evidence will show that Officers Breen and Irvine were *not* involved in the decision to seek a perjury indictment against Mr. Beckwith. Rather, Plaintiff's theory of liability as to both officers is based solely on the allegation that they fabricated evidence prior to the Grand Jury, which was then provided to prosecutors in the OCDA, who relied on that false evidence in seeking the indictment. Specifically, Plaintiff alleges that Officer Breen planted a bag containing what appeared to be illegal narcotics on his person, and that both Officer Breen and Officer Irvine falsely stated that Plaintiff was in possession of the bag at the time of the search. According to Plaintiff, this allegedly fabricated evidence was the basis for the perjury charge—asserting that he would not have been prosecuted for perjury based on his Grand Jury testimony about the planted drugs *but for* the OCDA's reliance on the officers' false statements.

There is a major flaw in this theory that was not raised on summary judgment that will need to be resolved by the Court, under Fed. R. Civ. P. 50, or potentially by the Jury. The flaw is that Plaintiff was convicted of perjury on four different statements, *only two of which* related to the allegedly fabricated drug bag. The other two perjurious statements were completely unrelated to the fabricated evidence, and instead related to Plaintiff's testimony that: (i) he had been anally penetrated by Officer Breen; and (ii) that he had been subject to a cavity search—*i.e.*, there was a search conducted of *the inside* of Mr. Beckwith's body, *i.e.*, his rectum. ADA Centra's summation arguments to the Jury in the criminal case featured the falsity of these statements, upon which Mr.

Beckwith was ultimately convicted. Plaintiff's subsequent testimony in this case has revealed that both of these statements he made to the Grand Jury were false.

Thus, even without the alleged fabricated evidence of the alleged planting of an ersatz drug bag (which Plaintiff contends occurred *after* the cavity search), Plaintiff would have still been convicted of perjury on two of the four counts. This means that even if he is successful in his contentions at trial regarding the fabrication of the ersatz drug bag, he would be entitled to only *nominal* damages. *See Rentas v. Ruffin*, 816 F.3d 214, 223 (2d Cir. 2016) ("'[w]hen a defendant has deprived the plaintiff of liberty[, via fabrication of evidence or malicious prosecution] ... but the ... adverse action would have been taken even' in the absence of the wrongful conduct, 'the plaintiff ... is entitled only to nominal damages.'"); *Santiago v. Fischer*, No. 23-814(L), 2025 WL 3029410, at *10 (2d Cir. Oct. 30, 2025) ("when a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages.").

## SUMMARY FACTUAL BACKGROUND OF THE CASE

On September 6, 2016, at approximately 3:00 a.m., Officers Irvine and Breen stopped a vehicle driven by Plaintiff Davonne Beckwith on West Kennedy Street in the City of Syracuse after observing multiple violations of the New York Vehicle and Traffic Law ("VTL"), including: VTL § 375(2)(a)(1) (no or insufficient headlight), VTL § 1163(b) (failing to signal at least 100 feet before a turn), and VTL § 1172(a) (failure to stop at a stop sign). Officer Irvine approached the driver's side of the vehicle and Officer Breen approached the front passenger's side where Plaintiff's girlfriend, Rayshell Johnson, was located. The officers observed the smell of burnt marijuana coming from the vehicle, as well as open containers of alcoholic beverages near Ms. Johnson's feet and in the back seat of the vehicle. There was also a marijuana blunt in the cup

3

holder between Plaintiff and Ms. Johnson (the blunt was ultimately secured as an item of evidence).

When Officer Irvine asked for Plaintiff's identification and vehicle information, Plaintiff began frantically looking for his documentation, was breathing heavily, and appeared to be overly excited. Plaintiff admitted that he did not have a valid driver's license because his license was suspended due to his failure to pay child support. Plaintiff also admitted he had been drinking and had an odor of alcohol coming from his breath.

Due to these observations, Officer Irvine instructed Plaintiff to exit the vehicle. Plaintiff refused that lawful instruction. Officer Breen observed Plaintiff holding an unknown object in his right hand which was balled into a fist while Officer Irvine independently observed Plaintiff reach his right hand behind himself and start "digging" behind his back. For approximately one minute, Plaintiff continued digging behind his back, refused orders to show his hands, and refused to exit the vehicle. When it became apparent that Plaintiff would not voluntarily exit the vehicle, Officer Breen informed him that he was under arrest. Officer Irvine attempted to open Plaintiff's door, but it was locked, so he reached into the open window to unlock the door before opening it. Plaintiff relocked the door, forcing Irvine to unlock it again. Once the door was open, Officer Irvine observed that Plaintiff had a sandwich bag with a tan substance in his hand that he then attempted to hand to Ms. Johnson. Ms. Johnson refused to take the bag and Plaintiff went back to trying to hide it behind his back, all while refusing to exit the vehicle.

Plaintiff then swung his left arm towards Officer Breen. Given the safety concerns presented by Plaintiff, Officer Breen grabbed Plaintiff's left arm to remove him from the vehicle but he resisted those efforts. Defendant Officers Breen and Irvine both drew their service weapons, but Officer Breen re-holstered his once he realized Officer Irvine had already drawn his weapon.

Officer Breen then drew his taser, yelled "taser, taser, taser" and deployed one cartridge at Plaintiff's chest and stomach, which was unsuccessful in incapacitating him.

Defendants proceeded to grab Plaintiff by the arms and remove him from the vehicle. Officer Breen then yelled "he's got dope." Despite Officer Irvine's reiteration that Plaintiff was under arrest, Plaintiff continued to resist by kicking, thrashing, and pushing the officers in an attempt to get away. After approximately one to two minutes, Defendants were able to handcuff Plaintiff. Plaintiff's kicking and flailing caused his pants and underwear to be pushed down below his buttocks, where Plaintiff continued to reach even after having been handcuffed. When Defendants stood Plaintiff up after handcuffing him, they observed what appeared to be the same bag from Plaintiff's vehicle sticking out of the top of the waistline of Plaintiff's underwear.

Once Plaintiff was walked over to Defendants' patrol vehicle, Officer Irvine removed the sandwich bag from between Plaintiff's underwear and waistband. Officer Irvine frisked the outside of Plaintiff's pants and his pockets for weapons, but when he attempted to further frisk his legs, Plaintiff began moving his body, thrusting his hips, swearing at, and threatening to kill the officers and their families. Officer Irvine was the only officer to conduct the single search of Plaintiff and he did not place his hands between Plaintiff's underwear, touch his anus, or conduct a cavity search. Following the search, Plaintiff was placed in the back of the officers' patrol vehicle. Within a few minutes of recovering the bag containing what appeared to be narcotics, Officer Irvine handed the bag to Officer Breen. Officer Breen then conducted two field tests on the substances in the bag, which were observed by Officer Irvine and Syracuse Police Department Officer Christopher Buske. Both field tests yielded positive results for cocaine and heroin. Officer Irvine then opened and field tested the blunt, which returned a positive result for marijuana. All seized evidence was labeled and submitted to be stored in evidence.

4903-8214-0554, v. 13

As a result, Plaintiff was arrested for two counts of criminal possession of a controlled substance ("CPCS") in the third degree ("CPCS 3rd"), CPCS in the fourth degree ("CPCS 4th"), CPCS in the seventh degree ("CPCS 7th"), unlawful possession of marijuana ("UPM"), resisting arrest, obstructing governmental administration in the second degree ("OGA 2nd"), tampering with physical evidence, aggravated unlicensed operation ("AUO") and various traffic offenses (collectively "Initial Charges")

Defendants transported Plaintiff to the Onondaga County Justice Center ("Justice Center") where he continued to act verbally confrontational, threatening to sue and kill the officers. Defendants then turned Plaintiff over to the custody of Justice Center deputies.

At some point later, Defendants learned that Plaintiff had complained of pain to employees of the Justice Center and was transported to Upstate University Hospital. At Upstate, Plaintiff was seen and diagnosed with "abrasion of [his] buttocks excluding anus." Plaintiff apparently also requested a sexual assault evaluation but declined to have any actual evaluation done stating that he "just wanted to make sure his injuries were documented." Plaintiff was then returned to the Justice Center.

At the time of the incident, Plaintiff was serving on parole/supervised release for a federal felony gun conviction. Three days after the incident, on September 9, 2016, Plaintiff's federal probation officer filed a violation of probation against Plaintiff due to a positive drug test for cocaine on April 1, 2016, and Plaintiff's September 6, 2016 arrest. That same day, an Onondaga County Grand Jury considered the initial charges against Plaintiff. Officers Irvine and Breen testified before the Grand Jury. Plaintiff signed a waiver of immunity and testified before the Grand Jury that he did not possess "anything," including crack cocaine or heroin, and that "I've never

possessed these drugs," and that an officer "*went in his rectum*, *slid his hand in* my pants and *rectum* to see if I have anything." Plaintiff further testified before the Grand Jury that:

> during this search when they had me on the hood they searched me three times. They did a pat down. *They did a cavity search*. *They did another cavity search*. They violated my civil rights. They violated my rights. Basically, *they had me out there naked doing a cavity search*. Two officers searched me that day, too. Like two officers searched me that night. One held me down on the hood of the car, bent over facedown. The other one was shaking my legs out, shaking my pants out, going *in my ass*, my rectum and my testicle area.

(emphasis added). On September 22, 2016, the Grand Jury indicted Plaintiff on all of the Initial Charges. Based upon Plaintiff's Grand Jury testimony Assistant District Attorney Joseph Centra ("ADA Centra") presented the additional charge of Perjury 1st to the Grand Jury. Defendant Irvine and Breen did not request that or encourage ADA Centra to present the Perjury 1st charge to the Grand Jury, and were not otherwise involved in the decision making. In fact, Defendants did not learn of the perjury charge until after the Grand Jury had voted to indict Plaintiff on that charge.

As part of the standard investigatory process, the substances that field testing identified as cocaine and heroin on September 6, 2016, were submitted to the Onondaga County crime laboratory, *i.e.*, the Wallie Howard, Jr. Center for Forensic Sciences (the "County Crime Lab"), for formal forensic analysis. On January 31, 2017, the County Crime Lab issued a report indicating that the "drug" bags recovered from Plaintiff containing the chunky material and the powder did not actually contain any controlled substances. Rather, the testing revealed that the bags were entirely filled with common "cutting agents" used in street narcotics trafficking. The presence of those cutting agents can produce a false positive in field testing. Nonetheless, based on the results of the formal testing of the recovered "drugs," on February 3, 2017, the drug charges were dismissed.

4903-8214-0554, v. 13

Plaintiff's criminal jury trial ("Trial") commenced on May 30, 2017, as to the charges of Perjury 1st, Resisting Arrest, and Obstruction of Governmental Administration. Plaintiff testified at his trial where he departed from and attempted to "walk back" the statements he made before the Grand Jury. On June 1, 2017, Plaintiff was convicted of Perjury 1st and Resisting Arrest. Plaintiff was sentenced on June 30, 2017, as a second felony offender to two to four years in prison on the Perjury charge and one year on the Resisting charge (to be served concurrently).

Plaintiff was received into the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on July 13, 2017, and was released on April 30, 2018. That same day, however, he was taken into federal custody by the U.S. Marshals. On May 2, 2018, Plaintiff admitted to previously violating the conditions of his federal supervised release by using cocaine on April 1, 2016. He was subsequently sentenced to eight months of imprisonment, commencing as of April 30, 2018, the date he was taken into federal custody.

Thus, Plaintiff's total period of incarceration related to the incident at issue spanned from September 6, 2016, to April 30, 2018 (a period of approximately 19 months). Of that time, approximately nine months were served in pre-conviction detention. The remaining 10 months, from the date of Plaintiff's conviction on June 1, 2017, to his release from state custody on April 30, 2018, were served post-conviction.

On April 24, 2020, the Appellate Division, Fourth Judicial Department, reversed Plaintiff's conviction for Perjury in the First Degree, holding that "the People failed to prove, beyond a reasonable doubt, that any of his allegedly perjurious statements to the grand jury were *actually* false" (emphasis added). In reaching that conclusion, the Fourth Department expressly acknowledged the high burden of proof in criminal proceedings, stating: "Although the People may have proved that defendant is probably guilty, the burden of proof in a criminal action is, of

course, much higher than probable cause." Importantly, the Fourth Department did not question the credibility of the officers' observations or the legitimacy of the physical evidence recovered from Plaintiff.

## SECTION I: CLAIMS TO BE TRIED

Following this Court's Memorandum-Decision and Order dated November 17, 2022, and its subsequent Memorandum-Decision and Order dated September 30, 2025, three claims remain for trial:

1. A 42 U.S.C. § 1983 claim for denial of the right to a fair trial, based on the alleged fabrication of evidence, in violation of the Fourteenth Amendment to the United States Constitution, against Officers Breen and Irvine;

2. A 42 U.S.C. § 1983 claim for malicious prosecution, in violation of the Fourth Amendment, against Officers Breen and Irvine; and

3. A New York State common law claim for malicious prosecution against all Defendants.

### Denial of the Right to a Fair Trial

#### (*against Officer Irvine and Officer Breen*)

Plaintiff brings a claim under 42 U.S.C. § 1983 for denial of the right to a fair trial, based upon allegedly fabricated evidence, against Officers Irvine and Breen.

Plaintiff alleges that Officers Irvine and Breen falsely stated in their police reports and felony complaints that they discovered contraband on his person—specifically, a bag containing individual packets of what appeared to be illegal narcotics. Plaintiff further claims that Officer Breen actually planted this evidence on him. Of course, Plaintiff was never prosecuted for any drug offense as a result of this conduct, so he cannot claim he directly suffered some loss of liberty from this fabrication.

Nonetheless, Plaintiff maintains that this conduct resulted in the loss of his liberty from his perjury conviction because he was ultimately convicted (for perjury) for testifying that he (i) "never possessed these drugs" and (ii) "did not know the reason for the [officer] planting [the evidence] on [him]."

THE PEOPLE OF THE STATE OF NEW YORK VS. DAVONNE BECKWITH

| | | | |
|---|---|---|---|
| **FIRST COUNT:** | **RESISTING ARREST** | **GUILTY** | **NOT GUILTY** |
| | RENDER YOUR VERDICT | | |
| | GO ON TO CONSIDER THE NEXT COUNT | | |

| | | | |
|---|---|---|---|
| **SECOND COUNT:** | **PERJURY IN THE FIRST DEGREE** | **GUILTY** | **NOT GUILTY** |

| | GUILTY | NOT GUILTY |
|---|---|---|
| [a] "He went in my rectum, slid his hand in my pants and rectum to see if I have anything. He stood me up." | ✓ | |
| [b] "After he just did three searches on me, did a cavity search and everything he didn't find nothing." | ✓ | |
| [c] "I never possessed these drugs, sir." | ✓ | |
| [d] "I don't know the reason for him planting that on me at all, sir.' | ✓ | |

RENDER YOUR VERDICT

REPORT YOUR VERDICTS

*William S Ford*
*6/1/17*

Plaintiff contends that the prosecutor's reliance on Defendants' allegedly false statements regarding the recovery of the "drug" bags was the but-for cause of his conviction on two counts of perjury.

<u>Malicious Prosecution</u>

(*against Officer Irvine and Officer Breen*)

Plaintiff also brings a claim under 42 U.S.C. § 1983 for malicious prosecution against Officer Breen and Officer Irvine based on the exact same conduct.

New York State Law Malicious Prosecution

(*against the City, Officer Irvine, and Officer Breen*)

Plaintiff asserts a malicious prosecution claim under New York State law against the City of Syracuse, Officer Breen, and Officer Irvine. As the Second Circuit has recognized, claims for malicious prosecution brought under Section 1983 are substantially the same as claims for malicious prosecution brought under state law. *See Ortiz v. Stambach*, 137 F.4th 48, 61 (2d Cir. 2025). Accordingly, Plaintiff's state law malicious prosecution claim is duplicative of his constitutional claim and does not present any distinct legal or factual issues.

The claim *does*, however, permit the Plaintiff to assert *respondeat superior* against the City, which wouldn't otherwise be available under § 1983. But such liability under this claim, would be purely derivative of any findings on the constitutional malicious prosecution claim, without the Jury needing to make any further factual findings.

**SECTION II:**

**ANTICIPATED LEGAL, EVIDENTIARY, OR UNIQUE ISSUES AT TRIAL**

A.    THE BASIC ELEMENTS TO BE CONSIDERED AND DECIDED

(1)    Denial of the Right to a Fair Trial Claim

Generally, "[t]he right to a fair trial [][is] guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment." *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010). As relevant here, a police officer may be held liable for a constitutional violation when he "creates false information likely to influence a jury's decision and [then] forwards that information to prosecutors." *Ricciuti v. NYC Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997).

To state a claim for a deprivation of a right to a fair trial, the plaintiff must allege that "(1) [an] investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision,

(4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F.App'x 149, 152 (2d Cir. 2012); *Garnett,* 838 F.3d 265 at 279–80. "[G]overnment officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015).

However, the "manufacture of false evidence, 'in and of itself,' … does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000). Any alleged manufactured or fabricated evidence must be the *proximate cause* of the deprivation of plaintiff's liberty. *See Jovanovic*, 486 Fed. App'x at 152. The alleged fabrications must be "both material (*i.e.*, likely to influence a jury's decision), and the legally cognizable cause of an injury to [plaintiff's] liberty interest (*i.e.*, that he 'suffer[ed] a deprivation of liberty as a result' of the alleged fabrication of evidence)." *Hoyos v. City of New York*, No., 999 F.Supp.2d 375, at *393 (E.D.N.Y. Dec. 11, 2013) (citing *Jovanovic*, 486 Fed. App'x at 152).

These cases teach that the constitutional *injury* from a due process claim is the loss of liberty—*i.e.*, a plaintiff's incarceration—and, thus, any recoverable compensatory damages must necessarily only flow from that injury.

Conversely, the issue of "materiality" posits that if no incarceration occurred, or if the incarceration would have incurred anyway, with or without the actionable conduct, there is necessarily no damages causation. *Rentas*, 816 F.3d at 223 ("when a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages.") (cleaned up) (citing cases).

(2)    Malicious Prosecution Claims

"The elements of a malicious prosecution claim are the same when brought pursuant to § 1983 and when brought under state law". *Boomer v. Bruno*, 134 F. Supp. 2d 262, 267 (N.D.N.Y. 2001). The elements for a malicious prosecution claim in New York are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). The question of favorable termination is ordinarily a question of law and has already been decided by this Court.[3]

The existence of probable cause is a complete defense to a claim of malicious prosecution. *See Gannon v. City of New York*, 917 F.Supp.2d 241, 244 (S.D.N.Y.2013). "Probable cause to prosecute consist of 'facts and circumstances [that] would lead a reasonably prudent person to believe the plaintiff guilty.'" *Mhina v. Colavita*, 2020 WL 224743, at *3 (N.D.N.Y. Jan. 15, 2020)[4] (citations omitted). In other words, probable cause means "probable cause to believe that [the prosecution] could succeed…." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

Additionally, "indictment by a grand jury creates a presumption of probable cause" that can be rebutted "only 'by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Hamell v. City of Utica*, 6:16-CV-0991(GTS/ATB), 2019 WL 1933938, at *11 (N.D.N.Y. May 1, 2019) (quoting

---

[3] *See Russo v. State of New York*, 672 F.2d 1014, 1020 (2d Cir.1982) (issue of favorable termination is one for judge if defendant presents no conflicting evidence as to the reason for the dismissal). Based on the Supreme Court's recent narrowing of favorable termination requirement, which rejected the prior Second Circuit standard, at present a plaintiff "need only show that the criminal prosecution ended without a conviction." *See Thompson v. Clark*, 596 U.S. 36, 49 (2022). This Court has already ruled as a matter of law that a favorable termination exists in this case. *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 290 (N.D.N.Y. 2022) ("the Appellate Division's reversal of Beckwith's perjury conviction constitutes favorable termination for his Section 1983 malicious prosecution claim").

[4] *denied and dismissed*, *Mhina v. Buske*, 20-444, 2021 WL 5286679, at *1 (2d Cir May 13, 2021), *cert. denied*, *Mhina v. Van Doren*, 142 S. Ct. 484 (2021).

4903-8214-0554, v. 13

*Manganiello*, 612 F.3d at 162 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). A conviction, even where later reversed, "provides an alternative basis for the presumption of probable cause." *Hadid v. City of New York*, 182 F. Supp. 3d 4, 14 (E.D.N.Y. 2016), *aff'd*, 730 F.Appx 68 (2d Cir. 2018); *see, e.g., Mitchell v. Victoria Home*, 434 F. Supp.2d 219, 228-29 (S.D.N.Y. 2006) (finding rebuttable presumption of probable cause due to conviction where conviction was reversed on appeal).

The same damages causation considerations at play with the fair trial claim also govern the malicious prosecution claim.

In other words, if the malicious prosecution claim is premised upon the theory that police officers forwarded false information to prosecutors, that actionable conduct only justifies the award of nominal damages unless and until the Plaintiff suffers a loss of liberty because of that conduct. *See Rentas*, 816 F.3d at 223 (applying standard to both malicious prosecution and fabrication of evidence claims); *c.f. Vincent v. Annucci*, 63 F.4th 145, 151 (2d Cir. 2023) ("[w]hen a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages"); *Santiago v. Fischer*, No. 23-814(L), 2025 WL 3029410, at *10 (2d Cir. Oct. 30, 2025) (same).

**B**.  **THE EFFECT OF *HECK V. HUMPHREY* ON DAMAGES AND DAMAGES CAUSATION**

Although the presentation and adjudication of the alleged conduct at issue here may be somewhat straightforward, the Court will face unique challenges based on the *split* nature of the underlying criminal outcome in terms of how issues will be decided by the Jury and argued by counsel. In the most basic scenario, there would be a conviction on a single charge that is allegedly premised upon false evidence and that is overturned on appeal. In such a scenario, a civil plaintiff is free to establish and argue materiality in a straightforward manner relative to materiality of the

conduct to the outcome of the trial, as well as the damages that flow from that binary decision by the criminal jury. That is not the situation here though.

Here, Plaintiff's conviction was *only* overturned *on the perjury charge* but upheld on the other charge—*i.e.*, resisting. Plaintiff is thus barred from bringing a malicious prosecution or a fair trial claim (or otherwise challenging the factual underpinnings) regarding his conviction for resisting arrest under the *Heck v. Humphrey* and collateral estoppel doctrines.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional…harm caused by actions *whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the *conviction or sentence has been reversed on direct appeal,* expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. As a result, where a plaintiff "makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir. 2003). Heck would also necessarily bar a plaintiff from challenging the probable cause underlying his arrest. *Quinlan v. City of Pensacola*, 449 F. App'x 867, 870 (11th Cir. 2011); *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010); *c.f.*, *Carruthers v. Colton*, 153 F.4th 169, 180 (2d Cir. 2025) (a conviction is "conclusive evidence of probable cause.")

Unfortunately, while there is case law identifying that wrongful conviction civil claims are still able to *proceed* in a piecemeal fashion (together with valid convictions that may not be challenged), there does not appear to be much case law that discusses *how* the limitations associated with that piecemeal status impact how evidence is presented at trial, the limitations on attorneys' arguments, jury instructions, and the application of the principles of damages causation.

Here, the Jury must be necessarily instructed that Plaintiff was validly convicted of resisting arrest and that he cannot challenge that conviction or the facts underlying that conviction. Nor can he challenge the existence of probable cause for his initial arrest and detention. As a result, he necessarily cannot claim any damages for any period of pre-trial incarceration leading up to his conviction on June 1, 2017—because that incarceration was valid under the probable cause, and ensuing indictment, for resisting arrest—which cannot be challenged in civil suit.

Thus, Plaintiff's constitutional injury, if any, flows from his post conviction incarceration between June 1, 2017 and his release from state confinement on April 30, 2018—a period of approximately 10 months. However, again, we have a valid one-year sentence for the resisting arrest conviction that would have presumptively spanned the period from Plaintiffs' date of arrest on September 6, 2016 to September 6. 2018. This sentence itself would have occurred regardless of the separate perjury charge and therefore acts to preclude the recovery of actual damages within this period. Thus, barring any further complications, Plaintiff's period of recoverable damages for loss of liberty, if any, would only span between September 6, 2017 and April 30, 2018, *i.e.*, a period of seven months.

However, further complicating this calculation is the fact that while Plaintiff was serving his state court sentence he had already been violated on his federal parole and would have begun his federal incarceration whenever his state sentence ended, including had it ended seven months earlier. Defendants intend to offer evidence of these facts which are necessarily relevant to materiality and damages causation. Thus, Plaintiff can prove no real period of incarceration that would have been caused solely and independently by his perjury conviction.

## C.    THE EFFECT OF THE TWO DIFFERENT CATEGORIES OF PERJURY ON MATERIALITY AND DAMAGES CAUSATION

As previously stated, where the facts demonstrate that the constitutional injury (*i.e.*, the

incarceration) would have occurred anyway, only nominal damages may be awarded. *Rentas*, 816 F.3d at 223 ("when a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages") (cleaned up) (citing cases). Thus, also at play in this trial based on the record is the fact that Plaintiff was convicted on four independent perjury counts, any one of which could sustain his perjury conviction.

As alluded to in the introduction of this brief, two of the stand-alone alleged perjurious statements have been admitted by Plaintiff in his subsequent testimony to at least being incorrect. Those two counts would necessarily sustain the perjury charge and obviate any argument regarding the materiality of the fabrication of the ersatz drug evidence to the conviction.

Now, Plaintiff will undoubtedly argue that his Grand Jury testimony was not *actually* false because he did not know what a rectum or a cavity search actually was. But that does not change the falsity of his testimony, it only goes to whether he intended to mislead. Either way, those misstatements that he made were not the product of any alleged false statement or fabricated evidence by the officers and would provide independent probable cause to the prosecutors to pursue a perjury indictment. Thus, even if successful on the other two perjury counts, Plaintiff should logically *only* be entitled to nominal damages under the Second Circuit's decision in *Rentas*.

D.    **THE ROLE AND ADMISSIBILITY OF PLAINTIFF'S PRIOR CONVICTIONS AT TRIAL.**

During Plaintiff's testimony, Defendants intend to reference a selected number of Plaintiff's prior convictions. These convictions are admissible under Fed. R. Evid. 609 and 404(b). Defendants may reference the following convictions during trial:

| Crime title | Drug related? | Classification | Date of Conviction | Date "released from confinement" | Age "release from confinement" to trial |
|---|---|---|---|---|---|
| Criminal Contempt 1st | | E Felony | 4/24/2025 | Plaintiff currently in custody | 0 yrs |
| Criminal Possession of a Controlled Substance 5th | Yes | D Felony | 4/24/2025 | Plaintiff currently in custody | 0 yrs |
| Criminal Contempt 2nd | | A Misd. | 3/25/2021 | 3/25/2021 | 4 yrs, 11 mos. |
| Felon in Possession of a Firearm 18 USC 922(g)(1) | | Felony | 1/4/2013 | 8/10/2020 | 5 years, 6 mos |
| Criminal Possession of a Controlled Substance 7th | Yes | A Misd. | 10/24/2011 | 10/24/2011 | 14 years, 4 mos |
| Criminal Possession of a Controlled Substance 7th | Yes | A Misd. | 3/8/2006 | 3/8/2006 | 19 yrs, 11 mos. |
| Criminal Sale of a Controlled Substance 5th | Yes | D Felony | 6/6/2003 | 3/16/2009 | 16 years |
| Unauthorized Use of a Motor Vehicle 3rd | | A Misd. | 2/19/2004 | 2/19/2004 | 22 years |
| Unauthorized Use of a Motor Vehicle 3rd | | A Misd. | 12/3/2001 | TBD | NLT 25 yrs |
| Burglary 3rd | | D Felony | 6/5/2000 | TBD | NLT 25 yrs |
| Attempted Criminal Possession of a Loaded Firearm 3rd | | E Felony | 1/5/1999 | TBD | NLT 26 yrs |

*FRE 609*

Rule 609 of the Federal Rules of Evidence governs a party's use of a criminal conviction

for the purpose of attacking a witness's character for truthfulness. Under Rule 609(a)(1), a prior

felony conviction "*must be* admitted" to impeach a witness's credibility in a civil case unless the

probative value of the evidence is substantially outweighed by the danger of unfair prejudice. (emphasis added).

"In balancing the considerations identified in Rule 609(a)(1), courts examine: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness. *Miller-Harris v. Cnty. of Onondaga*, No. 9:22-CV-1363 (AJB/DJS), 2025 WL 3022162, at *6–7 (N.D.N.Y. Oct. 29, 2025) (quoting *Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022)).

At the outset, obviously, Plaintiff's credibility is the paramount issue being considered by the Jury in this case—which essentially pits the parties' versions of events against each other.[5] Second, much of Plaintiff's past criminal conduct—specifically multiple convictions for the criminal sale of narcotics—is directly relevant to non-propensity issues in this case, including Plaintiff's denial that he possessed what appeared to be drugs packaged for street-level sale.[6] *See* discussion *infra*. While some of the convictions are more remote than others, *all* of Plaintiff's felony convictions provide a relevant motive for him to try to avoid criminal accountability for the police encounter at issue: (1) to avoid an extended sentence as a persistent felony offender; and (2)

---

[5] Plaintiff's credibility is central if "substantial components of the Plaintiff's claims can be anticipated to be resolved on the parties' conflicting versions of the same events: in other words, by credibility-dependent assessments, made from different descriptions of the same events." *Reeder v. Bishop*, 9:15-CV-1078 (MAD/TWD), 2019 WL 3732050, at *3 (N.D.N.Y. 2019).

[6] In addition, a conviction for selling drugs is moderately probative of a witness's credibility. *See U.S. v. Jackson*, 19-CR-356 (ARR), 2020 WL 7063566, at *2 (E.D.N.Y. 2020) ("A drug-sale conviction falls somewhere between drug possession and drug smuggling in terms of its probative value).

to avoid violating the terms of his parole/supervised release for his most recent felony conviction, which he was then serving.[7]

For example, as of September 6, 2016—the date of the incident—Plaintiff was on supervised release for a federal felony gun conviction. His probation was revoked on September 9, 2016 by District Judge Norman A. Mordue for violating the terms of his supervised release. That parole/supervised release provided Plaintiff with a strong motivation to lie about the police planting drugs on him. Finally, it should be observed that "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," although "all Rule 609(a)(1) felonies are not equally probative of credibility." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022).

All of Plaintiff's convictions, regardless of age, are also highly relevant to Plaintiff's claimed damages stemming from the perjury conviction. "Courts in this Circuit have held that, where emotional distress damages arising from unlawful incarceration are at issue, a 'plaintiff's prior arrest and incarceration history are relevant to the jury's determination of damages' "[b]ecause a plaintiff 'who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained'"; therefore, "defendants may inquire into plaintiff's past arrests and incarcerations...." *Jeanty v. Cerminaro*, No. 6:16-CV-00966 (BKS/TWD), 2021 WL 2778572, at *4 (N.D.N.Y. July 2, 2021) (citing cases).

According to Second Circuit precedent, Rule 609 permits the examining attorney to inquire into the "essential facts" of the conviction, including (i) "the nature or statutory name of each

---

[7] As of September 6, 2016—the date of the incident—Plaintiff was on supervised release for his federal gun conviction. "A defendant's parole status has been held to be probative of why a defendant would take extra steps to hide his criminal activity." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003).

offense," (ii) "its date, and" (iii) "the sentence imposed." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005).

It should also be noted that the ten-year limit threshold, which flips the presumption on the use of convictions for impeachment, runs from the date of conviction or the "*release from confinement*, whichever is later.*" See* Fed. R. Evid. 609(b) (emphasis added). There is a split of authority among the circuits as to whether this period also includes periods of supervised release or parole following the release from incarceration. *See United States v. Peatross*, 377 F. App'x 477, 489 (6th Cir. 2010) (citing cases). The Second Circuit does not appear to have weighed in on this dispute yet. However, where a witness is released from confinement to parole or supervised release and that release is later revoked, resulting in an additional period of incarceration, the Rule 609 clock does not begin to run until the witness is finally released from the subsequent period of confinement. *See Djangmah v. Falcione*, No. 08 CIV. 4027 (KPF), 2013 WL 6388364, at \*12, n.8 (S.D.N.Y. Dec. 5, 2013); *see also United States v. Jones*, No. 3:23-CR-26, 2024 WL 2302262, at \*2 (M.D. Pa. May 21, 2024) ("[s]entences imposed upon revocation of a defendant's term of supervised release are part and parcel of his underlying conviction and punishment.") (internal quotations omitted).

So, for example, Plaintiff was convicted in 2012 of a federal felony firearms offense and sentenced to 60 months' imprisonment followed by three years of supervised release. He was initially released from confinement on March 2, 2016; however, his supervised release was revoked on May 2, 2018, and he was resentenced to an additional eight months' incarceration, after which he was re-released on December 18, 2018. Plaintiff again violated the terms of supervised release on July 9, 2019, August 21, 2019, and September 23, 2019, and was resentenced

to an additional 12 months' incarceration.[8] Plaintiff was ultimately released from custody in or about September 2020, making the conviction approximately **five years old** for purposes of Rule 609.

*FRE 404(b)*

Plaintiff's three prior, and one subsequent, convictions for *Criminal Sale and/or Possession of a Controlled Substance* are also independently admissible under Fed. R. Evid. 404(b). Falling into this same category of relevance as Plaintiff being confronted with his prior testimony under oath that he has sold drugs previously. *See* Grand Jury Testimony at 57:19-21.

The Second Circuit, utilizing an "inclusionary approach," "'admits *all* 'other act' evidence that does not serve *the sole purpose* of showing the defendant's bad character….'" *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013) (emphasis added). Rule 404(b)(2) enumerates a non-exhaustive list of permissible purposes for other acts evidence, including showing motive, opportunity, and lack of mistake. Fed. R. Evid. 404(b)(2). However, the permissible purposes listed in Rule 404(b)(2) represent a floor, rather than a ceiling, as such evidence need only serve *a proper purpose* to be admissible, and "'[o]ther act' evidence serves *a proper purpose* so long as it is not offered to show [a person's] propensity to commit [an] offense.'" *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (emphasis added). Courts will "'admit evidence of prior bad acts if the evidence is relevant to an issue at trial other than the defendant's character….'" *Gogol v. City of New York*, No. 15 CIV. 5703 (ER), 2018 WL 4616047, at *3 (S.D.N.Y. Sept. 26, 2018) (quoting *United States v. Ga*rcia, 291 F.3d 127 (2d Cir. 2002)) (internal quotation omitted).

When it comes to past convictions, "[t]he Second Circuit generally allows into evidence relevant facts regarding a defendant's prior crimes except to the extent such prior crimes would

---

[8] For entire history s*ee United States v. Beckwith*, Case 5:11-cr-00018-GTS (N.D.N.Y.), Docket Entry 72 at pages 2-4.

tend to prove only criminal propensity." *East Coast Novelty v. City of New York*, 842 F. Supp. 117, 119 (S.D.N.Y. 1994). This inclusionary approach provides that "evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show defendant's criminal propensity, as long as it is relevant to some disputed issue in trial and satisfies the probative-prejudice balancing test." *U.S. v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (emphasis added) (quoting *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir. 1984); *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir. 1980)).

The Second Circuit has held that one such permissible purpose other than propensity is to show a pattern to rebut a claim of fabrication. *See, e.g., Carroll v. Trump*, 141 F.4th 366, 390 (2d Cir. 2025) (evidence "was relevant here *not* to show that the defendant had a 'bad character,' but for other purposes, *inter alia*, to show a pattern of conduct that tends to rebut Defendant's fabrication defense…."). In *United States v. Kessel*, the Eighth Circuit agreed that evidence of prior drug convictions was relevant and admissible under Rule 404(b) to rebut the defendant's theory that the police officer had "framed" him and "planted" drug paraphernalia on him. *United States v. Koessel*, 706 F.2d 271, 275 (8th Cir. 1983); *see also United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015) ("prior drug convictions have substantial probative value if defendant intends to argue that he did not actually possess or intend to possess drugs [because the "police planted drugs on him"], and it would not be unfairly prejudicial for the government to rebut defendant's proposed arguments or testimony with evidence of his prior drug convictions…."), *aff'd*, 659 F. App'x 461 (10th Cir. 2016).

Fore example, Ex. A to the Powers Decl., is the police reports from Mr. Beckwith's 2011 conviction of Criminal Possession of a Controlled Substance 7th. That incident tracks this one almost exactly, where Mr. Beckwith was stopped at traffic stop driving with a different girlfriend.

There was marijuana blunt in the car, and Beckwith had crack cocaine on his person in a plastic bag. As the police officer was speaking with him, Mr. Beckwith was making furtive movements to try to hide the bag of crack from the officer. *See* Ex. A at 7. Both the blunt and the crack were field tested and came back positive. The incident is a virtual mirror image of the events at issue in this lawsuit. Based on the case law above, this is the type of pattern evidence that tends to rebut Plaintiff's claim of fabrication.

Even to the extent the Plaintiff argues that the bags of purported drugs were not drugs at all, they *were* still full of common cutting agents for the street sale of cocaine and heroin—*i.e.*, quinine, aspirin, and caffeine—and they were packaged in a manner to resemble saleable narcotics. Cutting agents are "tools of the trade" for narcotics traffickers. Plaintiff's extensive prior and subsequent history in selling drugs makes it more likely that he had access to cutting agents, and would know that they necessarily resembled the drugs they were intended to mimic. *C.f., United States v. Ironi*, 525 F.3d 683, 688 (8th Cir. 2008) (prior drug convictions "demonstrate [witness] had knowledge about cocaine and the types of materials and objects typically found in the presence of cocaine, such as scales, drug packaging materials and cocaine cutting agents.").

In addition, the prior drug convictions provide a motive for Mr. Beckwith to try to hide the drugs in his pants and to refuse to get out of his car when he was ordered to do so by the officers. Police officers at trial will testify that experienced drug traffickers and users commonly try to hide narcotics in their pants. Plaintiff's experience with narcotics trafficking makes it more likely that he would have behaved in the manner testified to by the officers—*i.e.*, refusing to exit the vehicle and attempting to furtively place some object behind his back in his pants. *See., e.g., United States v. Russell*, 109 F.3d 1503, 1507 (10th Cir. 1997) (evidence of prior drug convictions admissible under 404(b) in part to show plan and motive for defendant "to hide her drugs in her shoe").

24

Finally, Plaintiff's status of being on parole at the time of the incident, and the threat of an enhanced sentence for his multiple prior felony convictions provide another non-character reason why his criminal history is relevant to whether or not he took steps to hide the drugs. *See Cruz*, 326 F.3d at 395 ("[a] defendant's parole status has been held to be probative of why a defendant would take extra steps to hide his criminal activity.").

## E.    REPLACEMENT WITNESS FOR SERGEANT BRIAN GRIMSLEY

On July 8, 2024, Defendants disclosed Sergeant Brian Grimsley as a witness with knowledge and qualifications to testify regarding the Syracuse Police Department's training, policies, and procedures applicable to Officers Irvine and Breen as of the date of the incident. This included topics such as taser usage, use of force, criminal investigations, and arrests.

At the time of this disclosure, the case was assigned to the Honorable Judge Glenn Suddaby. Plaintiff's counsel elected not to depose Sergeant Grimsley prior to the close of discovery.

The case was subsequently reassigned to the Honorable Judge Elizabeth C. Coombe on January 17, 2025—after the close of discovery and during the pendency of summary judgment briefing. Your undersigned has been advised that Sgt Grimsley's spouse is currently employed within Judge Coombe's chambers; but understand that she may not be assigned to this case.

Nonethless, Sergeant Grimsley has expressed that, given this relationship, he would feel uncomfortable testifying in a case pending before this Court. To avoid any appearance of impropriety and out of an abundance of caution, Defendants respectfully request, pursuant to Federal Rule of Civil Procedure 16, that they be permitted to substitute another qualified department witness (either Sergeant Joseph Heider or another comparably credentialed officer) to testify on the same subject matter as originally disclosed for Sergeant Grimsley.

25

This substitution will not prejudice Plaintiff, as (1) Plaintiff declined to depose Sergeant Grimsley during discovery, and (2) the proposed substitute witness will testify solely within the scope originally designated for Sergeant Grimsley.

**F.    SEQUESTRATION OF WITNESSES.**

Defendants request that, pursuant to Rule 615 of the Federal Rules of Evidence, all fact witnesses be excluded from the courtroom so that they do not hear the testimony of other witnesses. This request does not apply to party witnesses or expert witnesses.

**G.    FIDELITY TO A PARTY'S PROPOSED ORDER OF WITNESSES.**

In the interest of avoiding confusion, promoting efficient trial preparation, fostering civility among counsel, and preserving judicial economy, Defendants respectfully request that the Court require each party to confirm and disclose the order of their witnesses no later than the evening prior to each day of trial.

## CONCLUSION

This Trial Brief is submitted for the limited purpose of highlighting key legal issues expected at trial. It is not the intent of this Trial Brief to anticipate every legal issue that may arise at trial or capture every aspect or nuance of the applicable legal standards, or to otherwise describe or summarize the evidence that will come in at trial.


Dated: January 23, 2026             Respectfully submitted,
     Syracuse, New York

                   By:    s/ John G. Powers, Esq.
                         HANCOCK ESTABROOK LLP
                         John G. Powers, Esq. (508934)
                         Mary L. D'Agostino, Esq. (520301)
                         1800 AXA Tower I
                         100 Madison St.
                         Syracuse, NY 13202
                         (315) 565-4500

4903-8214-0554, v. 13

and

CORPORATION COUNSEL
CITY OF SYRACUSE
Darienn P. Balin, Esq.
City of Syracuse
233 E. Washington St., Suite 300
Syracuse, NY 13202
(315) 448-8400

4903-8214-0554, v. 13